**MODIFY and AFFIRM; and Opinion Filed April 25, 2019.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

**No. 05-18-00367-CR**

**No. 05-18-00368-CR**

**No. 05-18-00369-CR**

**BRANDON V. CARRAWAY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-75820-S, F17-75821-S, & F17-75822-S**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Molberg

Brandon V. Carraway was convicted by a jury of compelling prostitution of a person under

the age of eighteen,[1] sexual assault of a child,[2] and trafficking a person under the age of eighteen

for prostitution.[3] The State sought to enhance the punishment range for each offense with two

prior convictions. Carraway pleaded true to the alleged enhancements. The jury found the alleged

enhancements true and assessed punishment of thirty-five years' imprisonment on the compelling

---

[1] Trial court cause number F17-75820-S; appellate case number 05-18-00367-CR.

[2] Trial court cause number F17-75821-S; appellate case number 05-18-00368-CR.

[3] Trial court cause number F17-75822-S; appellate case number 05-18-00369-CR.

prostitution offense, twenty-five years' imprisonment on the sexual assault offense, and thirty years' imprisonment on the trafficking offense.

In one issue, Carraway contends the evidence is insufficient to support the conviction for compelling prostitution of a person under the age of eighteen.[4] We modify the judgment in each case to reflect the correct name of Carraway's trial attorney, Carraway pleaded "true" to the two alleged enhancements, and the jury found the alleged enhancements were "true." As modified, we affirm all three judgments.

## Background

In April 2017, when she was fourteen years old, R.J. ran away from her home in Fort Worth. R.J. made her way to Dallas where she met Roy, a pimp, and began working for him as a prostitute. On the first two days that R.J. worked for Roy, he posted advertisements for her services on the internet. For the "last couple days," R.J. "walked," and had sex with "dates" in their cars.

As R.J. was walking on Martin Luther King Boulevard, she saw some cars parked at a car wash. Carraway, one of the men at the car wash, stood up and told R.J. to "come." R.J. went over to Carraway. R.J. knew Carraway was a pimp based on how he was dressed and the jewelry he was wearing. After a brief conservation with Carraway, R.J. decided she want to go with him because he seemed more successful than Roy. After Carraway and Roy had an argument, R.J. left with Carraway.

Carraway drove R.J. to a Super 8 Motel at Interstate 635 and Jupiter Road. J.J., a prostitute who worked for Carraway, was in a room at the motel. J.J. had known Carraway for approximately two years and gave him all the money she earned as a prostitute. Carraway refused to allow J.J. to send any of the money to her family. According to J.J., Carraway never forced her to do

---

[4] Although Carraway appealed the convictions for sexual assault of a child and trafficking a person under the age of eighteen for prostitution, he did not raise any issue in his brief pertaining to those convictions and his counsel confirmed during oral argument that Carraway was not challenging those convictions.

anything, and it was her decision to give the money she earned to him. However, sometimes Carraway would ask J.J. to make more money. She would then contact some of her "regulars."

R.J. did not tell either Carraway or J.J. that she was only fourteen years old and admitted she may have told them she was eighteen years old. Carraway told J.J. to rent a room for R.J. Carraway then had sexual intercourse with R.J. in her room.

According to R.J., J.J. talked to her about using a condom, the amounts to charge the "dates," and the sexual acts she should not agree to perform. J.J., on the other hand, testified R.J. was a "pro," used her own prices based on what she charged her "car dates," and did not have any questions about how to "do it."

J.J. and R.J. took pictures of R.J. in the motel room. They forwarded these pictures, as well as pictures R.J. had stored on her telephone, to C.P., Carraway's girlfriend. C.P. used the pictures to post advertisements for R.J. in the Dallas section of Backpage.com. The advertisements contained sexually explicit language and listed a telephone number at which R.J. could be contacted. R.J. received calls from individuals who saw the advertisements and engaged in sexual conduct with three "dates" that evening. R.J. believed her "dates" paid her between $300 and $500. Carraway later entered R.J.'s room using his key and took all of the money. According to R.J., Carraway was the "boss," was "over everything," and "got the money."

The following day, R.J, J.J., Carraway, C.P., and Carraway and C.P.'s son went to Longview, Texas. Carraway told C.P. to buy R.J. some new clothes. While R.J. selected shorts and tank tops, C.P. and J.J. selected lingerie for R.J. to wear. C.P. took additional pictures of R.J. wearing the lingerie.

Over the next several weeks, C.P. posted advertisements for both R.J. and J.J. in the Longview and Tyler sections of Backpage.com. The advertisements included pictures of R.J. in lingerie, contained sexually explicit language, and listed a telephone number at which R.J. could

be contacted. R.J. received calls from individuals who saw the advertisements and engaged in sexual conduct with "dates" at motels in Longview and Tyler.

On May 10, 2017, Carraway, J.J., R.J., and A.R., another prostitute, went to Dallas. C.P. posted advertisements for all three women in the Dallas section of Backpage.com. The advertisements again included pictures of R.J. in lingerie, contained sexually explicit language, and listed a telephone number at which R.J. could be contacted. R.J. received calls from individuals who saw the advertisements and engaged in sexual conduct with "dates" in Dallas. J.J. confirmed that R.J. committed acts of prostitution in Dallas, Longview, and Tyler.

According to R.J., nobody forced her to have sex with any of the "dates" and nobody forced her to do anything she did not want to do. However, in Dallas, she began hiding part of the money she received from the "dates" under her mattress. She gave the rest of the money to Carraway. On May 11, 2017, R.J. pretended she was getting out of the shower and left the motel. R.J. did not believe she could have just told Carraway that she was leaving. J.J., however, testified that nobody would have prevented R.J. from leaving.

According to J.J., the fee to post the advertisements on Backpage.com was usually paid using a gift card. Facebook messages between C.P. and Carraway showed that C.P. regularly asked Carraway to purchase a gift card to pay for the advertisements. Carraway would purchase the card and supply the number on the card to C.P. Carraway also instructed C.P. to post advertisements for specific girls, including R.J. and to include different telephone numbers on R.J.'s advertisements.

J.J. admitted she had been charged with a felony offense that had a punishment range of two to twenty years' imprisonment. The prosecutor had told J.J. that, in exchange for her testimony, the charges might be reduced and J.J. might receive only probation.

–4–

**Analysis**

In one issue, Carraway asserts the evidence was insufficient to support the conviction for compelling prostitution of a person under eighteen years of age because the State failed to establish that he knowingly caused R.J. to commit prostitution.

In reviewing the sufficiency of the evidence, we consider whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). We must "defer 'to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Zuniga*, 551 S.W.3d at 732 (quoting *Jackson*, 443 U.S. at 319). When there is conflicting evidence, we presume the factfinder resolved the conflict in favor of the verdict and defer to that resolution. *Id.* at 733. We may not substitute our judgment for the factfinder's determinations of credibility. *Jackson*, 443 U.S. at 319; *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) ("An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence.").

"Direct evidence and circumstantial evidence are equally probative," *Zuniga*, 551 SW.3d at 733, and circumstantial evidence alone may be sufficient to establish guilt, *Nisbett*, 552 S.W.3d at 262; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett*, 552 S.W.3d at 262.

A person commits the offense of compelling prostitution if the person knowingly causes by any means a child younger than eighteen years of age to commit prostitution, regardless of whether the person knows the age of the child at the time of the offense. TEX. PENAL CODE ANN.

–5–

§ 43.05(a)(2). Prostitution includes knowingly offering or agreeing to receive a fee to engage in sexual conduct with another person. *Id.* § 43.02(a).

Under the penal code's general definition of "causation," a "person is criminally responsible if the result would not have occurred but for his conduct, operating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* § 6.04(a). In considering whether a person has caused a minor to engage in prostitution, courts have concluded that a person "who *provides opportunity* for a willing minor to engage in prostitution and *influences, persuades or prevails upon her to do so* has . . . caused the prostitution." *Waggoner v. State*, 897 S.W.2d 510, 512 (Tex. App.—Austin 1995, no. pet.); *see also Kelly v. State*, 453 S.W.3d 634, 641–42 (Tex. App.—Waco 2015, pet. ref'd).[5]

Carraway argues that R.J. was committing prostitution before she met him and there was insufficient evidence to show she would not have committed prostitution but for his conduct. However, it is irrelevant that R.J. may have engaged in prostitution at locations away from Carraway. *See Kelly*, 453 S.W.3d at 642 n.3.[6] Rather, the question is whether the jury could have found that, but for Carraway's conduct, R.J. would not have engaged in the specific acts of prostitution that occurred at the motel in Dallas. *See id.*[7]

---

[5] *See also Menyweather v. State*, No. 05-13-01108-CR, 2014 WL 6450826, at *4 (Tex. App.—Dallas Nov. 18, 2014, no pet.) (mem. op., not designated for publication) (concluding "by any means" includes providing opportunity for child, willing or unwilling, to engage in prostitution while influencing, persuading, or prevailing upon the child to do so).

[6] *See also Smith v. State*, No. 05-09-01331-CR, 2011 WL 2090256, at *4 (Tex. App.—Dallas May 27, 2011, no pet.) (mem. op., not designated for publication) ("Furthermore, [the child's] willingness to prostitute herself before and after her involvement with appellant does not mean he did not cause [the child], 'by any means,' to commit prostitution. Appellant provided [the child] with the opportunity to engage in prostitution and influenced or persuaded her to do so.").

[7] *See Menyweather*, 2014 WL 6450826, at *5 ("Absent Menyweather's conduct, [the child] would not have engaged in prostitution on the occasions" at issue in the case.).

–6–

The evidence showed that, as R.J. walked by the carwash, Carraway told her to "come"; after a brief conversation, R.J. decided to leave with Carraway; R.J. knew that Carraway was a pimp; Carraway drove R.J. to a motel in Dallas and provided her with a room; Carraway facilitated the posting of advertisements on Backpage.com that contained pictures of R.J. and provided a telephone number for individuals to call her; individuals contacted R.J. using the telephone number in the advertisement; and R.J., a fourteen-year-old child, engaged in sexual conduct with those individuals for a fee. Viewed in the light most favorable to the jury's verdict, we conclude a reasonable jury could have found that but for Carraway's conduct, R.J. would not have engaged in prostitution at the motel in Dallas. *See Kelly*, 453 S.W.3d at 643 (concluding evidence was sufficient to support conviction for compelling prostitution because, but for defendant's making telephone calls to men at the child's request, acting as translator for men who spoke Spanish, and providing bedroom in her house, the child would not have engaged in prostitution with those men at defendant's house).[8]

We resolve Carraway's sole issue against him.

## Modification of Judgments

The record in each case reflects that Carraway pleaded "true" to two alleged enhancements and the jury found the alleged enhancements were "true." However, the judgments incorrectly reflect "N/A" as to Carraway's pleas to the two alleged enhancements and to the jury's findings as

---

[8] *See also Quillens v. State*, No. 01-18-00056-CR, 2018 WL 4701580, at *4 (Tex. App.—Houston [1st Dist.] Oct. 2, 2018, no pet.) (mem. op., not designated for publication) (concluding evidence was sufficient to support conviction for compelling prostitution where defendant posted the child on website known to be used by traffickers to advertise women, arranged for his driver to take the child to an "out-call," waited while the child had sex with individual, and then took her to a hotel); *Payne v. State*, No. 01-16-00821-CR, 2017 WL 5503650, at *2 (Tex. App.—Houston [1st Dist.] Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (concluding evidence was sufficient to support conviction for compelling prostitution where defendant recruited child through texts and online conversations, set up her online advertisement, replied to potential customers' texts, handed her the phone for vocal conversations with potential customers, and drove her to location where prostitution was set to occur).

to the enhancements. Further, the judgment in all three cases incorrectly reflects that Daniel Eckstein was Carraway's attorney.

An appellate court has authority to modify a judgment to speak the truth when it has the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Therefore, on our own motion, we modify the judgment in each case to reflect Calvin Johnson was Carraway's attorney, Carraway pleaded "true" to the two alleged enhancements, and the jury found both enhancements to be "true."

As modified, we affirm the trial court's judgments.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

180367F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON V. CARRAWAY, Appellant

No. 05-18-00367-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F17-75820-S.
Opinion delivered by Justice Molberg,
Justices Myers and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the trial court's judgment titled "Attorney for Defendant" is modified to state "Calvin Johnson."

The section of the trial court's judgment titled "Plea to 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Plea to 2nd Enhancement/Habitual Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Findings on 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Findings on 2nd Enhancement/Habitual Paragraph" is modified to state "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of April, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON V. CARRAWAY, Appellant

No. 05-18-00368-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F17-75821-S.
Opinion delivered by Justice Molberg,
Justices Myers and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the trial court's judgment titled "Attorney for Defendant" is modified to state "Calvin Johnson."

The section of the trial court's judgment titled "Plea to 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Plea to 2nd Enhancement/Habitual Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Findings on 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Findings on 2nd Enhancement/Habitual Paragraph" is modified to state "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of April, 2019.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

BRANDON V. CARRAWAY, Appellant

No. 05-18-00369-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F17-75822-S.
Opinion delivered by Justice Molberg,
Justices Myers and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the trial court's judgment titled "Attorney for Defendant" is modified to state "Calvin Johnson."

The section of the trial court's judgment titled "Plea to 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Plea to 2nd Enhancement/Habitual Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Findings on 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Findings on 2nd Enhancement/Habitual Paragraph" is modified to state "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of April, 2019.